**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LARRY WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-CV-1837 SRW |
| | ) | |
| PAUL BLAIR,[1] | ) | |
| | ) | |
| Respondent(s). | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Larry White for a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1). The matter is fully briefed. Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the petition for a writ of habeas corpus is denied.

**I.    BACKGROUND**

In 2014, a jury convicted Petitioner of first-degree statutory rape, first-degree statutory sodomy, and incest. The Circuit Court of St. Louis County sentenced him to 25 years in prison.[2] Petitioner appealed his convictions to the Missouri Court of Appeals, Eastern District, who affirmed his convictions. Petitioner filed a post-conviction relief ("PCR") motion pursuant to Missouri Supreme Court Rule 29.15. The PCR motion court denied Petitioner's claims, and the appellate court affirmed the motion court's decision. Petitioner now seeks habeas relief before this Court.

---

[1] Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. *See* ECF No. 33.
[2] This sentence includes 25 years on each count of first-degree statutory rape and first-degree statutory sodomy, and four years for incest, to be served concurrently. Petitioner has completed his sentence for incest.

## II.      STANDARD

Pursuant to 28 U.S.C. § 2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995).

Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's

2

presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)).

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court which adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

## III.    DISCUSSION

Petitioner asserts ten claims in his Petition. The first two allegations concern trial court errors. Petitioner argues the trial court erred in admitting the victim's out-of-court statements under Missouri Revised Statute § 491.075, and the trial court erred in overruling Petitioner's motion for judgment of acquittal on five counts, submitting instructions to the jury on those counts, accepting the guilty verdicts as to those counts, and sentencing Petitioner on those counts. In his remaining eight claims, Petitioner asserts he received ineffective assistance of counsel when: his counsel failed to question Petitioner's daughters about the victim's mother when they testified; his counsel failed to consult with and call an expert witness; his counsel conducted the pretrial § 491.075 hearing without viewing the video interview of the victim; his counsel failed to make a proper objection to the bolstering testimony of Detective Bruno and Beverly Tucker; his counsel failed to investigate and present testimony from several witnesses; his counsel failed to object to the jury instructions in Petitioner's motion for new trial; his counsel failed to adequately inform Petitioner of the sentencing consequences in rejecting a five-year plea deal; and his counsel failed to investigate and present evidence that the victim's mother previously falsified allegations that Petitioner sexually abused the victim.

A.      **Victim's Out-of-Court Statements**

In his first claim, Petitioner asserts the trial court erred in admitting the out-of-court

statements made by the victim, J.R., under Mo. Rev. Stat. § 491.075. He argues the admission of

J.R.'s testimony allowed improper bolstering testimony by Detective Bruno and Beverly Tucker.

He claims this violated his rights to a fair trial and due process under the Fifth, Sixth, and

Fourteenth Amendments.

Petitioner's claim is not cognizable in a federal habeas action. With limited exceptions,

"admissibility of evidence at a state trial is a matter of state law and ordinarily will not form the

basis for federal habeas relief[.]" *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). "Thus, on

habeas review of a state conviction, a federal court does not examine whether evidence was

properly admitted under state law." *Tokar v. Bowersox*, 1 F. Supp. 2d 986, 1004 (E.D. Mo. 1998)

(citing *Estelle v. McGuire*, 502 U.S. 62 (1991)). Rather, review is "limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States." *Id.* A federal court

will reverse a state court evidentiary ruling "only if it 'infringes upon a specific constitutional

right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the

defendant the fundamental fairness that is the essence of due process.'" *Maynard v. Lockhart*,

981 F.2d 981, 986 (8th Cir. 1992) (quoting *Berrisford v. Wood*, 826 F.2d 747, 749 (8th Cir.

1987)).

Although Petitioner asserts the alleged trial court error violated his constitutional rights,

he provides no support or argument for how those rights were violated. In his argument on direct

appeal for this claim, he made no mention of constitutional error and only claimed the trial

court's error violated Missouri law. ECF No. 13-2, at 10-14. Petitioner has not shown the

admission of J.R.'s statements violated his constitutional rights, nor does the record show his

rights were violated by the admission of this evidence. The Court will deny the Petition on this claim.

### B.      Trial Court Error as to Counts 1, 2, 3, 4, and 9

In his second claim, Petitioner asserts the trial court erred in (1) overruling his motion for judgment at the close of the State's evidence as to counts 1-4, and 9, (2) submitting jury instructions 7-10, and 15 to the jury, (3) accepting the guilty verdicts as to counts 1-4, and 9, as well as (4) sentencing Petitioner on those counts. Petitioner believes the State failed to prove every element of the offenses and failed to present evidence as to the specifics of how any of the alleged events occurred.

The Court will first address subsection (2) of Petitioner's claim because it is procedurally defaulted. Petitioner raised this claim in his direct appeal, but the Court of Appeals reviewed the claim for plain error because Petitioner did not raise the issue in his motion for a new trial. Petitioner's claim is procedurally defaulted before this Court because he waived it before the state court. The Court of Appeals' decision rests on independent and adequate state procedural grounds, and the state court's discretionary plain-error review of Petitioner's claim does not excuse the procedural default. *Coleman v. Thompson,* 501 U.S. 722, 730 (1991); *Clark v. Bertsch*, 780 F.3d 873, 876-77 (8th Cir. 2015) (A state court's discretionary plain-error review of unpreserved claims does not excuse a petitioner's procedural default). Unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," his claim is procedurally barred. *Coleman*, 501 U.S. at 750. Petitioner has not established, or even attempted to argue, cause and prejudice, or that a failure to consider

this claim will result in a fundamental miscarriage of justice. Therefore, the Court will dismiss subsection (2) as procedurally barred.

In subsections (1), (3), and (4), Petitioner claims insufficient evidence supported his convictions on counts 1-4, and 9. Count 1 charged Petitioner with first-degree statutory rape, Counts 2-4 charged Petitioner with first-degree statutory sodomy, and Count 9 charged Petitioner with incest. For sufficient evidence to support a criminal conviction, the Fourteenth Amendment's Due Process clause requires "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (emphasis in original) (quoting *Jackson*, 443 U.S. at 319). This standard "gives full play to the responsibility of the trier of fact . . . to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

In habeas proceedings, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks and citations omitted). A federal habeas court "may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). Rather, a federal habeas court may only overturn a state court decision on the sufficiency of the evidence "if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Renico*, 559 U.S. at 773); *accord Coleman v. Johnson*,

6

566 U.S. 650, 656 (2012) (per curiam) ("Johnson") (A federal habeas court may grant relief if the jury's finding of guilt, based on the evidence considered in the light most favorable to the prosecution, "was so insupportable as to fall below the threshold of bare rationality.").

When reviewing a state court's sufficiency of the evidence decision, a federal court "'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). A federal habeas court is not permitted to make its own determination of witness credibility, for that determination is for the state court trier of fact. *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000). Additionally, the testimony of a victim or an eyewitness is sufficient to sustain a conviction. *See Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) ("If the jury believed [the eyewitness'] story, the State's presentation was more than sufficient to satisfy due process."); *see also Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction.").

The Missouri Court of Appeals held there was sufficient evidence to support Petitioner's convictions on counts 1-4, and 9, finding as follows:

> In *State v. Porter*, the defendant was convicted of two counts of first-degree statutory sodomy. On appeal, the defendant argued that the trial court erred in overruling his motion for judgment of acquittal because the victim's testimony was "so contradictory and inconsistent that it [could not] constitute substantive, probative evidence." The Missouri Supreme Court examined Missouri's "corroboration rule" and the "destructive contradictions doctrine" and abolished both. The corroboration rule allowed appellate courts to disregard a sex crime victim's testimony if it was contradictory and uncorroborated. The Court found that the corroboration rule should be abolished for two reasons. First, it required appellate courts to make credibility determinations that are for the trier of fact. Second, the corroboration rule only applied to victims of sex crimes, therefore assuming that a sex crime victim's testimony is less credible than another crime

7

victim's testimony and that "judges and juries are uniquely unable to make accurate factual determinations in sex crime cases." Similarly, the destructive contradictions doctrine allowed an appellate court to disregard a witness's testimony if the court determined the testimony was "inherently incredible, self-destructive or opposed to known physical facts with respect to an element on the crime." The Court again found the doctrine required appellate courts to make credibility determinations that are reserved for the finder of fact and therefore abolished the doctrine entirely.

Defendant's argument regarding the sufficiency of the evidence is similar to that of the defendant in *Porter*. Defendant urges us to find that there was insufficient evidence to support his convictions for Counts 1, 2, 3, 4 and 9 because [J.R.'s] testimony was vague, contradictory and did not provide specific dates or details. Defendant points to various instances in the record where [J.R.'s] statements were contradictory or unclear. However, the inconsistencies in [J.R.'s] statements do not render the evidence insufficient. At trial, [J.R.] testified that August 28 was not the first time that Defendant had put his mouth on her vagina, put his penis in her anus, or put his penis in her vagina. At the CAC, [J.R.] told Beverly Tucker that Defendant did the previously mentioned sexual acts prior to August 28, and that he also put his penis in her mouth. Any inconsistencies were for the jury's determination as the fact-finder. When we review the evidence in the light most favorable to the verdict, there was sufficient evidence for a reasonable juror to conclude that Defendant, prior to August 28, had sexual intercourse with [J.R.], put his mouth on [J.R.'s] vagina, put his penis in her anus, and put his penis in her mouth.

ECF No. 13-6, at 11-13 (internal citations omitted).

The Missouri Court of Appeals' decision is not objectively unreasonable. The trial transcript also supports the appellate court's summary of the evidence and J.R.'s testimony. ECF No. 17-1, at 241-71. Petitioner's counsel thoroughly cross-examined J.R. and brought forth any inconsistencies in her statement or potential undue influence from her mother. This allowed the jury to make a competent determination of J.R.'s credibility. Her testimony alone is sufficient to sustain the convictions. *See Tibbs*, 457 U.S. at 45 n.21; *Loeblein*, 229 F.3d at 726. Because sufficient evidence existed to sustain the conviction, the trial court did not err in overruling his motion for judgment at the close of the State's evidence, accepting the guilty verdicts, or sentencing Petitioner on Counts 1-4, and 9. The Court will deny the Petition as to this claim.

### C.        Ineffective Assistance of Counsel

In claims 3-10, Petitioner asserts he received ineffective assistance of counsel. He claims his trial counsel failed to present certain testimonial evidence from Petitioner's daughters, failed to consult with expert witnesses and present their testimony, failed to watch the video interview of J.R. prior to conducting the § 491.075 hearing, failed to make a proper objection to the bolstering testimony of Detective Bruno and Beverly Tucker, failed to investigate and present testimony from several witnesses, failed to object to jury instructions in his motion for new trial, failed to adequately inform Petitioner of the possible harsh sentencing consequences when rejecting a five-year plea offer, and failed to investigate and present evidence that J.R.'s mother had previously falsified allegations in 2005 that Petitioner had sexually abused J.R.

### 1.        Daughters' and Sister's Testimony

Petitioner argues his trial counsel failed to question Lori White and Lisa White, Petitioner's daughters, about critical information. According to Petitioner, Lori[3] would have testified that one year before J.R.'s accusations, Lori overheard Ladonna White, J.R.'s mother, threaten to report Petitioner for sexually abusing J.R. if he did not give her money. Petitioner asserts Lisa would have testified she heard Ladonna threaten to report Petitioner for sexual abuse of J.R. if Petitioner did not sign over the title for a truck and give her money. Both Lori and Lisa testified to these statements at Petitioner's PCR hearing. Petitioner also asserts, in claim seven, his sister, Marion White, would have testified Ladonna told her if Petitioner ever crossed her, she would falsely report him for child abuse. Marion testified to this in a deposition filed in Petitioner's PCR case.

---

[3] The Court refers to Lori White, Ladonna White, Lisa White, and Marion White by their first names to differentiate between them, not to imply any familiarity or informality.

On appeal of the denial of his PCR motion, the Missouri Court of Appeals affirmed the

denial of Petitioner's motion on this issue finding as follows:

> At the evidentiary hearing, Lori explained that, if asked at trial, she would
> have testified that she heard Mother tell Movant that if he "didn't give her . . .
> money, she was going to accuse him of messing with [Victim] in a sexual way."
> She explained that Mother made this threat "to make false allegations just so that
> he would give her money." Likewise, Lisa testified that "[a] couple weeks" before
> Movant was arrested, she heard Mother tell him "that she was going to make [an]
> accusation up, saying that he touched her, if [he] didn't . . . give her some
> money." Marion testified via deposition that Mother had made the same threats
> "to [her] face." Counsel, however, testified that he did not ask about the alleged
> threats because, while such evidence would have been consistent with his trial
> theory, "I considered it hearsay [since Victim's] mom was not called. I don't
> think either side wanted to touch her. And so it was hearsay."
>
> The Motion court denied Movant's point, finding the evidence at issue to be
> "inadmissible hearsay" such that Counsel was not ineffective for failing to present
> it.
>
> The motion court's findings and conclusions are not clearly erroneous. Here,
> Mother, not Victim, was the declarant of purported threats to fabricate allegations
> of sexual misconduct against Movant. Mother's threats were therefore indicative
> of her own state of mind, and they had no bearing on Victim's. Mother's state of
> mind, however, was not at issue here, and as such, the threats were not "especially
> relevant" in this case. Thus, the state of mind exception did not apply, and
> testimony about Mother's threats would have been inadmissible hearsay. "Trial
> counsel cannot be found ineffective for failing to offer inadmissible evidence."
> Since Movant cannot establish that Counsel rendered deficient representation, the
> motion court did not clearly err in denying his Amended Motion.

ECF No. 17-14, at 5-6 (internal citations omitted).

The Court of Appeals' decision is entitled to deference. In order to prevail on an

ineffective-assistance-of-counsel-claim, a petitioner must meet the two-prong test established by

*Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984): (1) he must show that counsel's

performance was so deficient that, "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance," and (2) he must

show "that the deficient performance prejudiced the defense," in the sense that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Petitioner has not established his counsel's performance was deficient or he was prejudiced by his counsel's decision.

Petitioner argues the proposed testimony is admissible under the declarant-victim state of mind hearsay exception. This Court's role is not to question a state court's applicability of state law unless the petitioner has challenged the constitutionality of the state law, which Petitioner has not done here. *Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The appellate court determined the statements were hearsay and did not meet any hearsay exception. This Court must abide by that ruling. *See Ford v. Norris*, 364 F.3d 916, 918-19 (8th Cir. 2004). Because the statements were inadmissible, Petitioner's counsel was not ineffective for failing to question Lori and Lisa, and to present Marion's testimony, about the statements.

Finally, Petitioner's claim also fails because he does not establish he was prejudiced by his counsel's decision. He was not prejudiced because the testimony would not have been admissible even if his counsel had tried to admit it. *See Blankenship v. United States*, 159 F.3d 336, 338 (8th Cir. 1998) ("No prejudice arises from counsel's failure to raise a claim that had little likelihood of success on the merits."). The Court will deny the Petition on these claims.

### 2.   Expert Witnesses

Petitioner argues his counsel provided ineffective assistance of counsel when he failed to consult with expert witnesses and present their testimony at trial. Petitioner raised this claim in his appeal of the denial of his PCR motion. The Missouri Court of Appeals affirmed the PCR motion court's denial on this issue, holding as follows:

> In his Amended Motion, Movant alleged that Counsel was ineffective for failing to consult with and call as an expert Dr. Duncan, who would have explained that "the techniques used by [Detective] Bruno and [Tucker] to interview [Victim] were improperly suggestive [and] would not lead to truthful

disclosures about sexual abuse." Movant argued he was prejudiced because, with Dr. Duncan's testimony, the jury would have known through "the benefit of expert advice . . . that the reliability of [Victim's] pretrial disclosures and trial testimony had been compromised by improper techniques.

At the evidentiary hearing, Dr. Duncan, a clinical psychologist, testified that under the Missouri-approved protocol for interviewing potential child victims of sexual abuse, of which she is familiar, Tucker's interview with Victim was "severely compromised" because Tucker used an excessive number of leading questions and "insertions" of her "own idea[s] into the repertoire of [Victim]." Thus, Dr. Duncan claimed that the interview was "contaminated" because Tucker's interviewing technique diminished the reliability of Victim's responses such that it would be "almost impossible" for a juror to determine whether Victim's claims were descriptions of events that actually occurred or merely "something put into [Victim's] verbal repertoire." Dr. Duncan testified that she charges $250 per hour for her work and that she spent eighteen to twenty hours preparing for the evidentiary hearing.

Counsel testified that he has forty years of experience as an attorney and "concentrate[s] on handling criminal cases," including a prior case in which he represented Movant in a forcible rape case where Movant was found not guilty. Counsel noted that this case "was not [his] first sexual assault on a child case." He explained that he retained no expert witness to assist with the issue of whether Victim's interview responses and testimony were reliable because, in his experience in sexual trauma cases, experts are "blatantly expensive" and have little "credibility with juries."

The motion court denied Movant's argument, finding that Counsel engaged in sound trial strategy by relying on his experience in deciding not to "spend money Movant may not have . . . on something that would not [affect] the outcome of the trial."

The motion court's findings and conclusions are not clearly erroneous. Here, Counsel testified that, in his experience in sexual trauma cases, expert witnesses lack credibility with juries such that they provide little benefit to the defense, especially given the cost of experts' fees. Dr. Duncan testified that she charges $250 per hour for her work and spent eighteen to twenty hours preparing for the evidentiary hearing alone. Counsel engaged in reasonable trial strategy in considering, under a cost-benefit analysis, whether to retain an expert witness and determining, based on his forty years of experience in criminal cases, not to retain Dr. Duncan because her fees would outweigh the benefit of her assistance in the case. Additionally, Counsel emphasized repeatedly the inadequacy of Tucker's questioning of the victim during cross examination and closing argument. Movant cannot show that Counsel's representation was deficient, and the motion court did not clearly err in denying the Amended Motion.

ECF No. 17-14, at 8-10.

"The selection of an expert witness is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014). Petitioner has not met that high bar. He has not established his counsel's performance was deficient by failing to call Dr. Duncan, or any other expert witness.[4] Petitioner's counsel's decision not to call Dr. Duncan was well-reasoned. The Missouri Court of Appeals' decision is entitled to deference. The Court will deny the Petition on this claim.

### 3.     Pre-Trial § 491.075 Hearing

Petitioner's fourth claim asserts his trial counsel provided ineffective assistance of counsel when he did not watch the video interview of J.R. prior to conducting the pre-trial § 491.075 hearing.[5] Petitioner raised this claim in his Amended PCR Motion. The Missouri Court of Appeals affirmed the PCR motion court's denial of this claim, finding as follows:

> At the evidentiary hearing, Counsel testified that during discovery he received, *inter alia*, a transcript of the interview between Victim and Tucker, a video recording of it, and a report giving "a detailed account of the . . . interview." Counsel noted that the video would not play, and while he asked the State for a new copy, the State did not provide one until "much later." Counsel testified that while the state provided a new copy of the video, he was "not sure" whether he received it by the time of the Section 491.075 hearing, which was scheduled for the Friday before the Monday of trial. Regardless, Counsel agreed that he "had enough time with the video before the trial" and that he "had . . . the written report" of the interview for the hearing, which was "fairly detailed as to what the allegations [were]."

> In denying Movant's argument, the motion court found that Movant failed to meet his burden to show that Counsel did not review the video and failed to show that he was prejudiced by any failure by Counsel to review it.

> The motion court's findings and conclusions are not clearly erroneous. Here, Movant presented no evidence to establish by a preponderance of the evidence

---

[4] Petitioner did not specify in his habeas motion before this Court, or in his reply brief, which expert his counsel should have called. The Court assumes he refers to Dr. Duncan, the expert raised in his state court filings.
[5] Under Missouri Revised Statute § 491.075, a prior statement made by a child under the age of fourteen is admissible as evidence in criminal proceedings if the court finds, in a hearing conducted outside the presence of the jury, the circumstances of the statement provide sufficient indicia of reliability.

that Counsel was deficient. When Counsel testified that he was "not sure" whether he had the recording by the time of the hearing, he never explicitly testified that he, in fact, did not possess it or that he did not view it. Moreover, Movant failed to show prejudice. Nothing in the evidence presented suggested that the video of the interview contained anything that was not in the transcript of the interview or the accompanying written report, both of which Counsel had prior to the hearing. Absent such evidence, Movant cannot show that there was a reasonable probability of a different outcome. The motion court did not err in denying Movant's Amended Motion.

ECF No. 17-14, at 11-13 (internal citations omitted).

The Court of Appeals' decision is entitled to deference. Petitioner has not established he was prejudiced from his counsel's alleged failure to view the video. In his reply brief, Petitioner argues he was prejudiced by this failure because if his counsel had viewed the video before trial, he could have obtained an expert witness who could have testified about the interviewer's improper interview techniques. Petitioner's counsel's testimony rebuts this assertion. His counsel testified he decided not to hire an expert not because he did not have time to do so but because he believed an expert would be expensive and that they do not have "much credibility with juries" in cases dealing with sexual trauma. ECF No. 17-8, at 119. Petitioner's counsel also testified he had a report and a transcript of the interview. *Id.* at 131-32. Petitioner does not explain why his counsel needed to view the video rather than just read the transcript. For these reasons, Petitioner has not established he received ineffective assistance of counsel on this issue. The Court will deny the Petition as to this claim.

### 4.     Failure to Object to Testimony

Petitioner asserts his counsel provided ineffective assistance of counsel when he failed to make a proper objection to the bolstering testimony of Detective Bruno and Beverly Tucker. Petitioner raised this claim in his Amended PCR motion. ECF No. 17-13, at 120-122. The PCR motion court found Petitioner raised the issue of improper bolstering in his direct appeal, and he could not raise it again in his PCR motion under the guise of ineffective assistance of counsel.

14

ECF No. 17-13, at 25-26. Petitioner appealed this ruling arguing the motion court erred in failing to make findings of fact and conclusions of law on the merits of his claim. ECF No. 17-10, at 17-18.

The Missouri Court of Appeals disagreed, finding Petitioner did not preserve his argument for appellate review:

> "The court shall issue findings of fact and conclusions of law on all issues presented, whether or not a hearing is held." "As a general rule, we are unable to provide meaningful review of an order denying post-conviction relief without findings of fact and conclusions of law, requiring reversal of the judgment and remand for the entry of findings and conclusions." However, "not every failure to enter a finding or conclusion for an issue requires reversal and remand." Reversal and remand are unnecessary "[w]here a post-conviction movant fails to file a Rule 78.07(c) motion to amend the judgment drawing the absence of required findings of fact or conclusions of law to the court's attention."[6] When a movant in post-conviction proceedings fails to file a motion to amend the judgment pursuant to Rule 78.07(c), he has preserved nothing for review insofar as his claim pertains to the form or language of a judgment.

> Here, the docket sheets do not show that Movant filed a motion to amend the Judgment, and the record contains no such motion. Having failed to file a motion to amend the judgment, pursuant to Rule 78.07(c), Movant has not preserved this point for appellate review.

ECF No. 17-14, at 17-18 (internal citations omitted).

Because Petitioner failed to properly preserve his claim for appellate review in state court, his claim is procedurally defaulted before this Court. When a state court decides a claim on state procedural grounds, rather than on the merits, federal habeas review is barred, because the state court decision rests on independent and adequate state procedural grounds. *Coleman*, 501 U.S. at 730. Such a claim is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id*. at 750.

---

[6] Rule 78.07(c) provides that "[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review."

15

Petitioner argues he can demonstrate cause and actual prejudice through *Martinez v. Ryan*, 566 U.S. 1 (2012). "Under the exception, [Petitioner] may overcome the default if: (A) 'the state collateral review proceeding was the 'initial review proceeding with respect to the 'ineffective-assistance-of-counsel claim''; (B) the ineffective-assistance claim is 'substantial'; and (C) postconviction counsel's ineffectiveness was the 'cause' for the default." *Taylor v. Steele*, 6 F.4th 796, 801 (8th Cir. 2021) (quoting *Harris v. Wallace*, 984 F.3d 641, 647-48 (8th Cir. 2021)). "To be substantial, 'the prisoner must demonstrate that the claim has some merit.'" *Id*. (quoting *Martinez*, 566 U.S. at 14). "This means that whether [Petitioner's] trial counsel was ineffective under *Strickland v. Washington* must at least be 'debatable among jurists of reason.'" *Id*. (quoting *Harris*, 984 F.3d at 648-49).

Petitioner's claim that his trial counsel was ineffective for failing to object to the bolstering testimony of Detective Bruno and Beverly Tucker does not have any merit; it is not "debatable among jurists of reason." First, it is unclear to what exact testimony Petitioner is referring. His Petition does not include any specific citations to the testimony at issue, nor does his reply brief. The Court assumes Petitioner refers to the same testimony addressed in his direct appeal.

On direct appeal, the Missouri Court of Appeals found Detective Bruno and Ms. Tucker's testimony did not improperly bolster J.R.'s testimony:

> In this case, Detective Bruno's testimony, including her recollection of what J.R. told her in her interview, was not admitted simply to rehash J.R.'s prior testimony at trial. Detective Bruno established the procedures and purpose of the police department's investigatory interview, as well as J.R.'s behavior and emotional reactions during her interview. Beverly Tucker's testimony also included her recollection of her interview with J.R., and established the process and procedures by which children are interviewed at the CAC. Most importantly, the witnesses' testimony served to highlight the various consistencies and changes in J.R.'s statements through time. As a result, each witness's testimony had a value apart from duplicating J.R.'s trial testimony.

16

ECF No. 17-6, at 6 (internal citations omitted).

Although the appellate court reviewed Petitioner's bolstering claim under plain error review because he did not properly preserve his argument, their rationale for the admissibility of testimony applies here. Detective Bruno and Ms. Tucker did not simply reiterate J.R.'s testimony. They provided their own recollections, observations of J.R.'s demeanor, and explanation of what occurred during the interviews. This was especially important where the credibility of J.R.'s testimony was being challenged, and the defense was attempting to assert J.R.'s testimony was fabricated by her mother.

"Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Biggs*, 333 S.W.3d 472, 479 (Mo. 2011) (quoting *State v. Seever*, 733 S.W.2d 438, 441 (Mo. 1987)). "A witness's testimony as to his or her own recollection of the child's statements as well as the circumstances surrounding the making of that statement necessarily will be different than that of an alternative witness." *Id*. As the Missouri Court of Appeals held, Detective Bruno and Ms. Tucker's testimony was not improper bolstering. Therefore, it would not have made a difference if Petitioner's counsel had objected to the testimony because it was admissible testimony. Petitioner cannot establish his counsel's performance was deficient or he was prejudiced by his counsel's failure to object.

Because Petitioner has not demonstrated his ineffective assistance of counsel claim has some merit, he has not established cause and prejudice under *Martinez*. Therefore, this claim remains procedurally defaulted, and the Court will deny the Petition as to this claim.

### 5.    Failure to Investigate and Present Witnesses

Petitioner argues his trial counsel provided ineffective assistance of counsel when he failed to investigate and present testimonial evidence from witnesses Marion White, Larry

White, Jr., Rochelle Carter, and Robert Adler. The State divided Petitioner's claim into five subsections: (1) failure to investigate the witnesses; (2) failure to call Marion White; (3) failure to call Larry White, Jr.; (4) failure to call Rochelle Carter; and (5) failure to call Robert Adler. The Court refers to these same subsections for consistency.

Petitioner fully exhausted this claim before the state courts as to Marion White, but failed to exhaust the remainder of the claim either by failing to raise it in his Amended PCR motion or in the appeal of the denial of his PCR motion. Therefore, subsections (1), (3), (4) and (5) are procedurally defaulted. The Court previously addressed the claim as it relates to Marion White above. It will now address the remainder of the claim.

Petitioner did not raise a failure to investigate witnesses claim in his Amended PCR Motion. ECF No. 17-13, at 103-112. He asserted claims of failing to call Lori and Lisa White, Marion White, Larry White, Jr., Rochelle Carter, and Robert Adler as witnesses at trial. *Id*. at 107-112. However, these claims do not mention a failure to investigate these witnesses. Therefore, this claim is procedurally defaulted. Petitioner also did not assert his failure to call Larry White, Jr., Rochelle Carter, and Robert Adler claims in his appeal of the denial of his PCR motion. ECF No. 17-10, at 13-18. These claims are also procedurally defaulted.

"[A] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing 28 U.S.C. § 2254(b)(1)(A)). Exhaustion requires "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan,* 526 U.S. at 848)). A petitioner under § 2254 may avoid procedural default only by showing there was

cause for the default and resulting prejudice, or a miscarriage of justice would result from enforcing the procedural default in the petitioner's case. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). In order to establish cause, a petitioner must show "some objective factor external to the defense" prevented his compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner attempts to establish cause and prejudice for his default through *Martinez,* asserting his PCR counsel was ineffective for failing to raise these claims. This means Petitioner must show his claim is substantial, or has some merit. *Taylor*, 6 F. 4th at 801.

In his reply brief, Petitioner asserts Larry White, Jr., his son, and Rochelle Carter, his daughter, would have testified they lived in Petitioner's house during the time period of the alleged abuse, and it was extremely unlikely for Petitioner to be alone with J.R. and not as frequent as was suggested by J.R. Petitioner did not attach an affidavit from either of his children attesting to these statements, and they did not testify at his PCR hearing. Petitioner also asserts Robert Adler, his attorney in a different proceeding for failure to register as a sex offender, would have testified Petitioner reported to him a year before J.R. made her accusations that J.R.'s mother was extorting money from him by making threats to falsely accuse him of abusing J.R. Mr. Adler advised Petitioner not to pay her any more money. A deposition of Mr. Adler was taken for Petitioner's PCR proceedings. However, the statements Petitioner included in his reply brief were not addressed in Mr. Adler's deposition.

When analyzing a claim of ineffective assistance of counsel for failure to call a witness, the Court considers the credibility of all witnesses, including the likely impeachment of any uncalled witnesses, the interplay of uncalled witnesses and actual defense witnesses called, and the strength of the evidence presented by the prosecution. *Armstrong v. Kemma*, 590 F.3d 592,

596 (8th Cir. 2010). The decision not to call a witness is a "virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005).

Petitioner fails to establish he received ineffective assistance of counsel when his counsel failed to call Larry White, Jr. and Rochelle Carter as witnesses. At trial, Lisa and Lori White testified on behalf of Petitioner. Lisa testified she lived off and on with her father during the time period in question, and J.R. was "very rarely" alone with Petitioner. ECF No. 17-1, at 358. She also testified J.R. never told her anything about the sexual abuse allegations even though they were close and shared secrets with one another. *Id*. at 359. Lori testified she lived with Petitioner and was very close to J.R. *Id*. at 363-64. She testified J.R. mostly slept with her in her room, and she never saw Petitioner touch J.R. in any type of unusual or sexual way. *Id*. at 365. Lori testified J.R. never told her that Petitioner harmed her in any way. *Id*. at 366. Larry and Ms. Carter's testimony would have been cumulative to Lisa and Lori's testimony. Counsel is not ineffective for failing to call witnesses whose testimony would have been repetitive. *Schlup v. Armontrout*, 941 F.2d 631, 639 (8th Cir. 1991); *see also Tisius v. Jennings*, 4:17-CV-426 SRB, 2020 WL 6386874 at *13 (W.D. Mo. Oct. 30, 2020) (citing *Winfield v. Roper*, 460 F.3d 1026, 1033 (8th Cir. 2006)).

Petitioner also fails to show his counsel was ineffective for failing to call Robert Adler as a witness. Mr. Adler's proposed testimony is to relay a statement made by Petitioner to Mr. Adler about J.R.'s mother. Mr. Adler's testimony would not have been admissible because it is hearsay. Although the admission of a party opponent does not qualify as hearsay, the statement must be offered by the opposing party. *State v. Floyd*, 347 S.W.3d 115, 124 (Mo. Ct. App. 2011). In this case, Petitioner seeks to offer his own statement through his own witness. This does not qualify as an admission of a party opponent. Because Mr. Adler's testimony would not be

admissible, Petitioner cannot establish his counsel was ineffective for failing to call Mr. Adler as a witness.

Petitioner fails to establish his claims are substantial; therefore, he has not shown cause and prejudice to excuse his procedural default of these claims under *Martinez*. The Court will deny the Petition as it relates to these claims.

### 6.    Failure to Object to Jury Instructions

Petitioner asserts he received ineffective assistance of counsel when his trial counsel failed to object to jury instructions in his motion for new trial. Petitioner raised this claim in his Amended PCR motion, but he did not appeal the denial of the claim. Therefore, this claim is procedurally defaulted. Petitioner attempts to establish cause and prejudice for his default through *Martinez,* asserting his PCR counsel was ineffective for failing to appeal the denial of this claim. This means Petitioner must show his claim is substantial, or has some merit. *Taylor*, 6 F. 4th at 801.

Petitioner does not specify what instructions his counsel should have objected to in his motion for new trial. The Court will assume Petitioner is referring to the same instructions he challenges in his second claim, his claim of trial court error, which are instructions 7-10, and 15. Instruction 7 states:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> First, that between September 1, 2007 and August 27, 2010, at 1464 Ferguson Avenue, in the County of St. Louis, State of Missouri, the defendant knowingly had sexual intercourse with J.R. in the bedroom, and
> Second, that at that time J.R. was a child less than twelve years old,
> then you will find the defendant guilty under Count I of statutory rape in the first degree.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

ECF No. 17-5, at 65. Instruction 8 states:

21

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that between September 1, 2007 and August 27, 2010, at 1464 Ferguson Avenue, in the County of St. Louis, State of Missouri, the defendant knowingly had placed his tongue on the vagina of J.R. in the bedroom, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at the time J.R. was a child less than twelve years old, then you will find the defendant guilty under Count II of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the tongue of another person, done for the purpose of arousing or gratifying the sexual desire of any person.

ECF No. 17-5, at 66.

Instruction 9, for first-degree statutory sodomy, was identical to Instruction 8, but specified Defendant "placed his penis against the anus of J.R." and defined "deviate sexual intercourse" as "any act involving the genitals of one person and the anus of another person, done for the purpose of arousing or gratifying sexual desire of any person." ECF No. 17-5, at 67. Instruction 10, for first-degree statutory sodomy, was Identical to 8 and 9, except it specified that Defendant "put his penis into the mouth of J.R." and defined "deviate sexual intercourse" as "any act involving the genitals of one person and the mouth of another person, done for the purpose of arousing or gratifying sexual desire of any person." ECF No. 17-5, at 68.

Instruction 15 states:

As to Count IX, if you find and believe from the evidence beyond a reasonable doubt:

First, that between September 1, 2007 and August 27, 2010, at 1464 Ferguson Avenue, in the County of St. Louis, State of Missouri, that defendant engaged in deviate sexual intercourse with J.R. by placing his penis into the mouth of J.R. in the bedroom, and

Second, that J.R. was a stepchild of defendant by virtue of a marriage creating that relationship and which still existed at the time referred to in paragraph First, and

Third, that defendant knew or was aware J.R. was a stepchild of defendant by virtue of a marriage creating that relationship and which still existed at the time

22

referred to in paragraph First, then you will find the defendant guilty under Count IX of incest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth of another person, done for the purpose of arousing or gratifying the sexual desire of any person.

ECF No. 17-5, at 73.

Petitioner does not argue why these instructions were incorrect. In his reply brief, Petitioner states his trial counsel objected at trial to the instructions because they did not require the jury to find unanimously Petitioner committed a single act corresponding to each count charged. ECF No. 29, at 29. The Court will assume he makes the same argument here.

To establish his PCR counsel was ineffective for failing to appeal this issue, Petitioner must establish his trial was ineffective for failing to object to the jury instructions in his motion for new trial, which means he must establish the jury instructions were incorrect. If the jury instructions were correct, Petitioner's counsel cannot be ineffective for failing to object to them. The Missouri Court of Appeals addressed the sufficiency of the jury instructions in Petitioner's direct appeal:

The Missouri Constitution provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate." The Missouri Supreme Court has interpreted "as heretofore enjoyed" to protect "all the substantial incidents and consequences that pertain to the right to jury trial at common law." A unanimous jury verdict is a "substantial incident" of the right to jury trial. In cases where multiple alleged acts in a given time period are charged in a single count, the court can protect a defendant's right to a unanimous jury verdict by either (1) choosing one particular act to support the charge, or (2) specifically instructing the jury that they must unanimously agree that at least one of the multiple acts occurred.

Here, Defendant asserts that the jury instructions are not specific enough to allow the jury to come to a unanimous verdict. Defendant also argues that the evidence presented at trial was insufficient for the jurors to unanimously agree to a specific act on each of these counts. Defendant contends that the jury instructions are similar to those in *Celis-Garcia*. In that case, the two victims

alleged multiple acts of sexual abuse in various locations. The jury instructions simply required the jury to find the defendant guilty if they found "that between [specified dates] . . . the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals[.]" The Court found these instructions were insufficient because the instructions did not require the jurors to agree on one particular act in one particular location.

Contrary to Defendant's contention, the jury instructions in this case are less like those [in] *Celis-Garcia* and more like those in *State v. Flores*. In *Flores*, the Western District found that the jury instructions required a unanimous verdict because "[t]he various instructions described specific parts of the body that were touched and specified the location where the touching occurred." In the instant case, J.R. told Beverly Tucker at the CAC that Defendant had placed his mouth on her vagina, inserted his penis in her anus, inserted his penis in her vagina, and put his penis in J.R.'s mouth on multiple occasions prior to August 28, 2010. J.R. said that Defendant did these acts both in the bedroom and on the couch. The challenged instructions provided a specific time period for the alleged acts ("between September 1, 2007 and August 27, 2010"), described the specific body part that was touched, and specified the location of the acts ("in the bedroom"). As a result, the jury instructions were sufficient to secure a unanimous jury verdict. We find no error, plain or otherwise.

ECF No. 17-6, at 14-16 (internal citations omitted).

As the state appellate court found, the jury instructions were sufficient under Missouri law. Each charge and accompanying instruction stated the specific act on which the jury was asked to convict. *See State v. Celis-Garcia*, 344 S.W.3d 150, 157 (Mo. 2011) ("[A] defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge, or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred."). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. The Missouri Court of Appeals found Petitioner's jury instructions to be sufficient. This Court must accept that conclusion. Therefore, Petitioner did not receive ineffective assistance of counsel when his counsel failed to object to the instructions in his motion for new trial because it would have been a meritless objection.

24

Petitioner fails to establish his underlying ineffective assistance of counsel claim is substantial, and he has not shown cause and prejudice for his default under *Martinez*. This claim is procedurally defaulted. The Court will deny the Petition as to this claim.

### 7.  Failure to Advise as to Sentencing Consequences

Petitioner argues he received ineffective assistance of counsel during the plea-bargaining process when his trial counsel failed to inform him of the possible harsh sentencing consequences of rejecting a five-year plea deal. Petitioner raised this claim in his Amended PCR Motion; however, he did not appeal the denial of this claim. ECF Nos. 17-13, at 106, 17-10, at 13-18. Therefore, this claim is procedurally defaulted. Petitioner asserts he can establish cause and prejudice under *Martinez* because his PCR counsel was ineffective for failing to appeal the denial of this claim.

At the time Petitioner was facing charges in for the convictions challenged in this case, he was also facing charges that he had failed to register as a sex offender. ECF No. 17-8, at 103. Douglas Forsyth represented Petitioner in the case at issue here, and Robert Adler represented him in the failure to register case. At Petitioner's PCR motion hearing, both Petitioner and Mr. Forsyth testified about the plea deal. Petitioner also submitted a deposition from Mr. Adler.

Before the start of trial, the trial court put on the record the details of the plea deal offered to Petitioner. ECF No. 17-1, at 4-6. The proposed deal required Petitioner to plead guilty to five counts with a one-year sentence on each count, each sentence to be served consecutively for a total of five years. *Id*. Petitioner would serve this sentence in the county jail. *Id*. The trial court confirmed with Petitioner that he had been told of the five-year offer and did not want to plead guilty. ECF No. 17-1, at 4-6. The trial court did not review the maximum sentence with Petitioner. *Id*.

25

At the PCR hearing, Mr. Forsyth testified he told Petitioner, at the time the plea deal was offered, this was a "reasonably good offer," and if he did not take it, he could go to prison for the rest of his life. *Id*. at 108. Mr. Forsyth also testified when he initially met with Petitioner, he explained the range of punishment was a minimum of ten years and a possibility of life in prison. *Id*. at 129. Mr. Forsyth testified Petitioner rejected the plea offer and never indicated he wanted to take the deal after it was initially offered. *Id*. at 130.

Mr. Adler, who represented Petitioner on his failure to register charge, was deposed for Petitioner's PCR case. He testified he told Petitioner, in the failure to register case, there was a four-year maximum, and he anticipated Petitioner getting time served. ECF No. 13-11, at 9. He also testified he told Petitioner the combined recommendation of five years for both cases was a good recommendation because of the more serious offense concerning J.R. *Id*. Mr. Adler did not explain to Petitioner the maximum sentence he was facing in the more serious case.

Petitioner testified at his PCR hearing Mr. Adler sent him a letter conveying the plea offer, but he did not tell him anything about the plea. ECF No. 17-8, at 70. He also testified Mr. Forsyth communicated the plea offer to him but did not tell him what could happen if he went to trial and was found guilty. *Id*. at 71. Petitioner testified he thought if he went to trial and was found guilty, he would get five years. *Id*. He thought the result would be the same whether or not he pled guilty. Petitioner stated Mr. Forsyth told him he was glad Petitioner did not take the plea deal because he thought they could win the case. *Id*.

Petitioner also testified he had not seen the video interview of J.R. before trial, but if he had seen the video, he would have just taken the five years. *Id*. at 72-73. Petitioner testified he would have pled guilty, even though he was not guilty, to avoid the longer prison term. *Id*. at 73. On cross-examination, Petitioner again reiterated he did not commit this crime, and he was

innocent. *Id*. at 88. He also stated, "I wasn't guilty. What would I take the plea for?" *Id*. at 90. He

further testified, "No, I didn't want a plea deal. I wasn't guilty." *Id*. at 96.

> The PCR Motion court denied Petitioner's ineffective assistance claim finding:

> Movant is incorrect in that the maximum sentence he could have received was not twenty-five years in the Missouri Department of Corrections but a term of imprisonment of thirty years or life on the unclassified felonies of Statutory Rape in the First Degree and Statutory Sodomy in the First Degree.

> Trial counsel testified he advised Movant if he did not take the plea offer, "he could go to prison for the rest of his life." Trial counsel stated he had "conversations" with Movant about the range of punishment and he advised Movant he could spend the rest of his life in jail if he chose to proceed to trial and was found guilty and that Movant understood those risks. At no point did Movant ever indicate he wished to plea guilty.

> Movant has failed to show he suffered any prejudice.

ECF No. 17-13, at 16-17.

In order to prevail on his ineffective-assistance-of-counsel-claim, Petitioner must show

his counsel's performance was so deficient that, "in light of all the circumstances, the identified

acts or omissions were outside the wide range of professionally competent assistance," and "that

the deficient performance prejudiced the defense," in the sense that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 690, 694. The PCR Court found Petitioner's counsel was

not deficient. In doing so, the PCR judge believed Mr. Forsyth's testimony over Petitioner's.

This Court's role is not to "redetermine [the] credibility of witnesses whose demeanor has been

observed by the state trial court, but not by [this Court]." *Marshall v. Lonberger*, 459 U.S. 422,

434 (1983). In adopting Mr. Forsyth's testimony over Petitioner's testimony, the PCR motion

court clearly found Mr. Forsyth to be more credible than Petitioner. Mr. Forsyth testified he

informed Petitioner of the consequences of rejecting the plea deal, including the potential

maximum sentence he faced if convicted. Therefore, Mr. Forsyth's performance was not deficient.

Petitioner also fails to establish he was prejudiced by his counsel's allegedly deficient performance. "When the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show [*Strickland*] prejudice, the defendant must show that, but for his counsel's advice, he would have accepted the plea." *Talavera v. United States*, 842 F.3d 556, 558 (8th Cir. 2016) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)). While Petitioner testified he would have taken the plea deal had he been adequately informed of the potential consequences of proceeding to trial, he also repeatedly testified he was innocent. "A defendant who maintains his innocence at all stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later [habeas] claim that he would have pleaded guilty if he only received better advice from his lawyer." *Id.* (quoting *Sanders*, 341 F.3d at 723).

Petitioner has not established his ineffective assistance of counsel claim is substantial. Thus, he has not shown cause and prejudice under *Martinez* to excuse the procedural default of this claim. The Court will deny the Petition as to this claim.

**8.      Failure to Investigate and Present Evidence on Victim's Mother**

In his final claim, Petitioner argues he received ineffective assistance of counsel when his trial counsel failed to investigate and present evidence J.R.'s mother had previously falsified allegations in 2005 that Petitioner sexually assaulted J.R. Petitioner did not assert this claim in his Amended PCR motion; therefore, it is procedurally defaulted. Unless Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice," his claim is procedurally barred. *Coleman*, 501 U.S. at 750. Petitioner has not established, or even attempted to argue, cause and prejudice or that a failure to consider this claim will result in a fundamental miscarriage of justice. Therefore, the Court will dismiss this claim as procedurally defaulted.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Larry White for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner Larry White's Petition is **DISMISSED, with prejudice**. Petitioner has not made a substantial showing of a denial of a constitutional right, and this Court will not issue a Certificate of Appealability. 28 § U.S.C. 2253(c)(2). A separate judgment in accord with this Order is entered on this same date.

So Ordered this 4th day of February, 2022.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE